IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| JUANA T. <br> ex rel. A.L., a minor, <br><br> Plaintiff, <br><br> v. <br><br><br> NANCY A. BERRYHILL, <br> **Acting Commissioner of Social Security,** <br><br> Defendant.[1] | Civil No. TMD 17-2337 |

************

## MEMORANDUM OPINION GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Juana T. on behalf of her minor son ("A.L.") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her child's application for Supplemental Security Income under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 21) and Defendant's Motion for Summary Judgment (ECF No. 24).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that A.L. is not disabled. No hearing is necessary. L.R.

---

[1] On April 17, 2018, Nancy A. Berryhill became the Acting Commissioner of Social Security. *See* 5 U.S.C. § 3346(a)(2); *Patterson v. Berryhill*, No. 2:18-cv-00193-DWA, slip op. at 2 (W.D. Pa. June 14, 2018).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 21) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

On January 21, 2016, Administrative Law Judge ("ALJ") Francine L. Applewhite held a hearing where Plaintiff and A.L. testified. R. at 171-219. The ALJ thereafter found on February 23, 2016, that A.L. was not disabled since the application date of April 2, 2013. R. at 146-70. In so finding, the ALJ found that A.L., who was born in November 2007, (1) had not engaged in substantial gainful activity since the application date of April 2, 2013; and (2) had the severe impairments of attention deficit hyperactivity disorder and adjustment disorder; but (3) did not have an impairment or a combination of impairments meeting, medically equaling, or functionally equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 152-64. The ALJ found that A.L.'s impairments did not functionally equal a listed impairment because he did not have an impairment or combination of impairments that resulted in either "marked" limitations in two out of six domains of functioning or "extreme" limitation in one domain of functioning. R. at 153-64. Rather, the ALJ found that he had less than marked limitations in acquiring and using information and in attending and completing tasks. R. at 156-59. The ALJ also found that A.L. had no limitations in interacting and relating with others, in moving about and manipulating objects, in the ability to care for himself, and in health and physical well-being. R. at 159-64. In so finding, the ALJ gave "significant weight" to the opinions of the state agency consultants. R. at 156.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on August 15, 2017, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Disability Determinations and Burden of Proof**

An individual under the age of 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.906. To determine whether a child has a disability within the meaning of the Social Security Act, the Commissioner follows a three-step sequential evaluation process. 20 C.F.R. §§ 416.924, 416.926a. The first step is a determination whether the child is engaged in substantial gainful activity. *Id.* § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step. The second step involves a determination whether a claimant's impairment or combination of impairments is severe, i.e., more than a slight abnormality that causes no more than minimal functional limitations. *Id.* § 416.924(c). If not, benefits are denied; if so, the evaluation continues. The third step involves a determination whether the child has an impairment or impairments that meet, medically equal, or functionally equal in severity a listed impairment. *Id.* § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

"A child's functioning is determined by looking at six broad areas, or 'domains,' in an attempt to evaluate 'all of what a child can or cannot do.'" *Woodhouse ex rel. Taylor v. Astrue*, 696 F. Supp. 2d 521, 527 (D. Md. 2010) (quoting 20 C.F.R. § 416.926a(b)(1)). In the domain of "acquiring and using information," the Commissioner considers how well a child acquires or learns information, and how well the child uses the learned information. 20 C.F.R. § 416.926a(g). In the domain of "attending and completing tasks," the Commissioner considers how well a child is able to focus and maintain attention and how well the child begins, carries through, and finishes activities. *Id.* § 416.926a(h). In the domain of "interacting and relating with others," the Commissioner considers how well a child initiates and sustains emotional connections with others, develops and uses the language of the child's community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of others' possessions. *Id.* § 416.926a(i). In the domain of "moving about and manipulating objects," relating to a child's gross and fine motor skills, the Commissioner considers how the child moves his or her body from one place to another and how the child moves and manipulates things. *Id.* § 416.926a(j). In the domain of "caring for yourself," the Commissioner considers how well a child maintains a healthy emotional and physical state, including how well the child gets his or her physical and emotional wants and needs met in appropriate ways, how the child copes with stress and changes in the environment, and whether the child takes care of his or her own health, possessions, and living area.. *Id.* § 416.926a(k).

Impairments "functionally equal listing-level severity when they produce an 'extreme' limitation in a child applicant's functioning in one domain or 'marked' limitations in functioning in two domains." *Woodhouse*, 696 F. Supp. 2d at 527 (citing 20 C.F.R. § 416.926a(d)). A "marked" limitation in a domain is one that "interferes seriously with [the claimant's] ability to

independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation in a domain is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

### III

### **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or

substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ failed to evaluate properly the "whole child" in evaluating whether A.L.'s impairments functionally equaled one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Pl.'s Mem. Supp. Mot. Summ. J. 6-8, ECF No. 21-1. Plaintiff also asserts that, in determining the functional equivalence of A.L.'s impairments, the ALJ failed to include all of the state agency mental health consultants' findings and failed to comply with the regulations when weighing opinions. *Id.* at 8-9. For the following reasons, Plaintiff's arguments are unavailing.

"The 'whole child' approach is a 'technique for determining functional equivalence,' which 'accounts for all of the effects of a child's impairments singly and in combination.'" *Panas ex rel. M.E.M. v. Berryhill*, No. CIV 17-0364 WJ/JHR, 2018 WL 741389, at *10 (D.N.M. Feb. 7, 2018) (quoting Social Security Ruling ("SSR") 09-1p, 2009 WL 396031, at *2 (effective Mar. 19, 2009)), *report and recommendation adopted*, No. CIV 17-0364 WJ/JHR, 2018 WL 3742616 (D.N.M. Aug. 7, 2018), *appeal docketed*, No. 18-2145 (10th Cir. Sept. 28, 2018).[3] The

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).

6

Social Security Administration "will 'always evaluate the "whole child" when [it] make[s] a finding regarding functional equivalence[.]'" *Id.* (alterations in original) (quoting same). "The 'whole child' approach recognizes that many activities require the use of more than one of the abilities described in the first five domains, and that they may also be affected by a problem that [the Commissioner considers] in the sixth domain." SSR 09-1p, 2009 WL 396031, at *3.

> The functional equivalence rules require us to begin by considering how the child functions every day and in all settings compared to other children the same age who do not have impairments. After we determine how the child functions in all settings, we use the domains to create a picture of how, and the extent to which, the child is limited by identifying the abilities that are used to do each activity, and assigning each activity to any and all of the domains involved in doing it. We then determine whether the child's medically determinable impairment(s) accounts for the limitations we have identified. Finally, we rate the overall severity of limitation in each domain to determine whether the child is "disabled" as defined in the [Social Security Act].

*Id.* at *2. Specifically, the Commissioner considers the following questions:

1. How does the child function? The Commissioner considers the following:

   a. What activities the child is able to perform,

   b. What activities the child is not able to perform,

   c. Which of the child's activities are limited or restricted,

   d. Where the child has difficulty with activities—at home, in childcare, at school, or in the community,

   e. Whether the child has difficulty independently initiating, sustaining, or completing activities,

   f. The kind of help, and how much help the child needs to do activities, and how often the child needs it, and

   g. Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.

---

"While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

2. Which domains are involved in performing the activities?

3. Could the child's medically determinable impairment(s) account for limitations in the child's activities?

4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain?

*See id.* at *2-3; *see also* 20 C.F.R. § 416.926a(b)(2). "An ALJ need not cite all of the considerations in SSR 09-1P; his reasoning is sufficient if it permits a subsequent reviewer to understand how he reached his findings." *Panas*, 2018 WL 741389, at *11 (citing SSR 09-1p, 2009 WL 396031, at *3).

> The regulations advise preschool claimants between three and six years old:
>
> As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.

20 C.F.R. § 416.926a(h)(2)(iii).

> The regulations further advise school-age claimants between six and twelve years old:
>
> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

*Id.* § 416.926a(h)(2)(iv).

Here, the ALJ first set forth the general concept behind the "whole child" approach:

> As provided in 20 CFR 416.926a(b) and (c) and explained in SSR 09-1p, I have evaluated the "whole child" in making findings regarding functional equivalence. I have first evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments. I have also assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains. In evaluating the claimant's limitations, I have considered the type, extent, and frequency of help the claimant needs to function.

R. at 153. The ALJ then discussed A.L.'s limitations and abilities as stated in Plaintiff's reports of A.L.'s functioning, Plaintiff's testimony, A.L.'s testimony, A.L.'s aunt's report, teacher questionnaires submitted by A.L.'s teachers, A.L.'s grades, and his medical records. R. at 154-64. The ALJ also discussed the various domains of functioning and assessed the degree to which A.L.'s impairments limit his ability to function age appropriately in each domain by referring to various medical opinions, the observations of A.L.'s teachers, and his school records. R. at 154-64. The ALJ ultimately found that A.L. did "not have an impairment or combination of impairments that result[ed] in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning" and that he was not disabled. R. at 164. Because the Court finds that the ALJ used the "whole child" approach, Plaintiff's argument to the contrary is unavailing. *See Panas*, 2018 WL 741389, at *11-13 (rejecting argument that ALJ was obliged to directly compare claimant with other children of claimant's age under former 20 C.F.R. § 416.913(c)(3)).

Plaintiff finally contends that remand is warranted because, despite giving "significant weight" to the state agency consultants' opinions, the ALJ failed to incorporate the medical opinion of Adrine McKenzie, Ph.D., the state agency psychological consultant who opined that A.L. had a marked limitation in the domain of attending and completing tasks (R. at 156, 235-

9

36). Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 21-1. Plaintiff also maintains that the ALJ failed to explain why she did not adopt all of Dr. McKenzie's relevant findings and to discuss the factors under 20 C.F.R. § 416.927(c) when considering medical opinions. *Id.* at 9. Any errors were harmless, however, as the ALJ did not find that A.L. had marked limitations in any of the other five domains. "Because a determination of functional equivalence requires two domains of marked limitation, even if the ALJ erred in the second domain, no reversible error exists. Instead, any such error would be harmless because, absent any other marked limitation in another domain, the ALJ's finding of 'no disability' would stand." *Smith ex rel. T.S. v. Astrue*, No. SAG-11-CV-165, 2012 WL 1067880, at *3 (D. Md. Mar. 28, 2012). Plaintiff's contention in this regard thus is unavailing as well.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 21) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: March 22, 2019 /s/
Thomas M. DiGirolamo
United States Magistrate Judge